Agreement" including the following pertinent language:

> I agree to the following terms and conditions of this Personal Training Agreement ("Agreement"): 1. I understand that any/all recommended exercises are voluntary and I can refuse to participate in any/all of the recommended exercises. . . . 5. All standard terms and conditions of my membership agreement are incorporated in and made a part of this Agreement."

Plaintiff's Exhibit 3, Personal Training Agreement dated 7/5/10, at 2. In choosing to work with a personal trainer, a client presumably relies on the health and safety training of the trainer who holds him or herself out as an expert in the field. Indeed, a novice trainee would understandably rely on the expertise of a trainer to avoid the "inherent risk of personal injury in using exercise equipment and machines."

From this perspective, I believe that a broad waiver of liability found on the reverse side of a general membership contract, with no specific reference to personal trainers or personal training, does not clearly encompass personal training services. At best, the exculpatory provision is ambiguous as it pertains to personal training and the provision must be construed against the party seeking immunity from liability. *Topp Copy*, 626 A.2d at 99.

Finding that the waiver of liability is against public policy and does not clearly encompass claims related to personal training services, I would reverse the grant of summary judgment and remand for further proceedings.

Judge PANELLA joins this Dissenting Opinion.

Tracy PRICE

v.

SIMAKAS COMPANY, INC., Simakas Inc., Simakas Co., Simakas Brothers, Inc., Alexander Simakas t/d/b/a Simakas Brothers, All Fields Electric Company.

Appeal of Indiana University of Pennsylvania and Gregory Sipos and Dane Sprankle.

Superior Court of Pennsylvania.

Argued Sept. 18, 2015.

Filed Feb. 1, 2016.

Michael S. Ferguson, Harrisburg, for Indiana University of PA, appellant.

John F. Deasy, Pittsburgh, for All Fields Electric Company, appellee.

Ned J. Nakles, Jr., Latrobe, for Price, appellee.

BEFORE: BOWES, OLSON, AND STABILE, JJ.

OPINION BY STABILE, J.:

Appellants, Indiana University of Pennsylvania ("IUP"), Gregory Sipos ("Sipos"), and Dane Sprankle ("Sprankle"), appeal from the trial court's October 10, 2014 order denying Appellants' motions to quash the subpoenas issued to Sipos and Sprankle. We affirm.

On February 8, 2005, Tracy Price ("Plaintiff") sustained injuries while working on the premises of Advance Polymer Technology ("APT") in Harmony, Butler County. Plaintiff was using a machine known as a lab mixer to mix batches of polymer materials. Plaintiff's hair became tangled in the machine and she was unable to reach a switch to cut power to the machine. Subsequently, Plaintiff commenced this action against Simakas Company, Inc., Simakas, Inc., Simakas Co.,

Simakas Brothers, Inc. and Alexander Simakas t/d/b/a Simakas Brothers (collectively the "Simakas Defendants") and All Fields Electric Company ("All Fields," and collectively with the Simakas Defendants, "Defendants"). Plaintiff's complaint alleged that APT contracted with the Simakas Defendants to conduct maintenance and safety procedures at APT, and that APT contracted with All Fields to perform electrical work at APT. Plaintiff alleged that the Defendants were negligent in their duties, in particular in their failure to install a guard that would have prevented her hair from catching in the mixer, or an emergency shut off switch or power switch accessible to the mixer's operator.

The week before Plaintiff's injury, IUP employees Sipos and Sprankle conducted health and safety inspections at APT. APT sought the inspections pursuant to 29 C.F.R. § 1908.1 *et seq.*, whereby a small business can request health and safety inspections from the United States Department of Labor—Occupational Safety and Health Administration ("OSHA"). IUP receives federal grant money to administer such inspections on behalf of OSHA. Sipos performed his inspection on January 31, 2005. Sprankle performed his inspection on February 1, 2005. Both provided written reports to APT.

According to the trial court, APT has voluntarily disclosed Sipos' and Sprankle's written reports in discovery. Trial Court Opinion, 12/11/14, at 7.[1] The Simakas Defendants' expert reviewed the Sipos and Sprankle reports and cited them as a "wall-to-wall safety and health inspection" of APT's facility, during which neither Sipos nor Sprankle noted any health or safe-

ty violations concerning the lab mixer. Expert Report of Eugenia Kennedy, 8/29/13, at 7. In an interview with Plaintiff's counsel, however, Sipos indicated he did not inspect the lab mixer. Plaintiff's Motion *in Limine*, 9/26/14, at ¶ 18. Subsequently, Plaintiff noticed the deposition of Sipos and Sprankle, believing their testimony would refute an inference that they inspected the lab mixer and found it to be in safe condition. IUP filed a motion to quash the subpoenas, asserting that federal regulations prohibit Sipos and Sprankle from testifying about an OSHA inspection. The trial court denied IUP's motion, and this timely appeal followed.

IUP raises two issues for our review:

Whether Pa.R.A.P. 313 and the collateral order doctrine permit this Court to review the trial court's order denying the motions to quash subpoenas since the legal issue presented would be irreparably lost if postponed until final judgment?

Whether the trial court erred when it denied the motions to quash subpoenas issued to employees of the Indiana University of Pennsylvania, who's [sic] testimony, about consultations services provided to businesses on behalf of the United States Department of Labor—Occupational Safety and Health Administration is confidential, and precluded by federal regulation?

IUP's Brief at 4.

■ We begin with an analysis of whether the trial court's orders are appealable collateral orders pursuant to Pa. R.A.P. 313. If they are not, we have no jurisdiction over this appeal.

---

1. In contrast, Plaintiff and All Fields assert that IUP produced the reports in response to a discovery request from All Fields. Plaintiff's Brief at 2; All Fields' Brief at 4–5. We will defer to the trial court's finding, as set forth in its opinion. For purposes of our analysis, the fact of disclosure of the written report—without objection from either APT or IUP—is more significant than the identity of the disclosing party.

■ Rule 313 of the Pennsylvania Rules of Appellate Procedure provides:

(a) **General rule.** An appeal may be taken as of right from a collateral order of an administrative agency or lower court.

(b) **Definition.** A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313. "[T]he collateral order doctrine is a specialized, practical application of the general rule that only final orders are appealable as of right." *Melvin v. Doe*, 575 Pa. 264, 836 A.2d 42, 46–47 (2003). "Thus, Rule 313 must be interpreted narrowly, and the requirements for an appealable collateral order remain stringent in order to prevent undue corrosion of the final order rule." *Id.* at 47. "To that end, each prong of the collateral order doctrine must be clearly present before an order may be considered collateral." *Id.*

■ We agree with IUP's assertion that the instant appeal is separable from and collateral to the underlying action. The applicability of federal regulations purportedly precluding the testimony of Sipos and Sprankle is analytically distinct from the merits of Plaintiff's causes of action. Furthermore, our Supreme Court has held that discovery orders requiring disclosure of allegedly privileged materials are generally appealable under Rule 313 where, as here, the issue of privilege is separable from the underlying issue. *Ben v. Schwartz*, 556 Pa. 475, 729 A.2d 547, 551–53 (1999); *see also Castellani v. Scranton Times, L.P.*, 598 Pa. 283, 956 A.2d 937, 942 n. 5 (2008). In other words, when the legal merit of an assertion of privilege is sufficiently separable from the legal issues in the underlying case, an order compelling disclosure commonly meets the remaining two prongs of Rule 313. We conclude this maxim holds true in this case.

■ An issue is sufficiently important for immediate review under Rule 313(b) if it involves rights "deeply rooted in public policy going beyond the particular litigation at hand." *Id.* at 552 (quoting *Geniviva v. Frisk*, 555 Pa. 589, 725 A.2d 1209, 1214 (1999)). Here, the asserted privilege, set forth in 29 C.F.R. § 1908.6(g)(2) and (h)(2), protects the confidentiality of voluntary health and safety inspections conducted by OSHA at the behest of an employer. In addition, IUP also argues that 29 C.F.R. §§ 2.20–2.22 forbid Department of Labor employees from disclosing information related to their duties without approval of the Secretary of Labor. IUP asserts that Sipos and Sprankle acted as Department of Labor employees during their inspection of APT. IUP's assertion of a federally protected confidentiality interest is sufficiently important to warrant collateral review.

Finally, the court-ordered depositions of Sipos and Sprankle cannot be undone once they occur. We are cognizant that the written reports have been disclosed. IUP argues, however, that court-ordered testimony of Sipos and Sprankle violates federal law regardless of APT's disclosure. We must address that argument in this appeal or not at all. We therefore conclude the order before us is appealable under Rule 313.

■ Turning to the merits, IUP's claim arises under 29 C.F.R. § 1908.1 *et seq.*, governing OSHA consultation agreements. Section 1908.1, titled "Purpose and Scope," notes that § 1908 governs "Cooperative Agreements between **states** and [OSHA] [. . .] under which OSHA will utilize **state**

personnel to provide consultative services to employers." 29 C.F.R. § 1908.1(a) (emphasis added). IUP cites two provisions of the Code of Federal Regulations governing the confidentiality of APT's OSHA inspection. We begin with 29 C.F.R. § 1908.6(g):

(g) Written report.

(1) A written report shall be prepared for each visit which results in substantive findings or recommendations, and shall be sent to the employer. The timing and format of the report shall be approved by the Assistant Secretary. The report shall restate the employer's request and describe the working conditions examined by the consultant; shall, within the scope of the request, evaluate the employer's program for ensuring safe and healthful employment and provide recommendations for making such programs effective; shall identify specific hazards and describe their nature, including reference to applicable standards or codes; shall identify the seriousness of the hazards; and, to the extent possible, shall include suggested means or approaches to their correction. Additional sources of assistance shall also be indicated, if known, including the possible need to procure specific engineering consultation, medical advice and assistance, and other appropriate items. The report shall also include reference to the completion dates for the situations described in § 1908.6(f)(1) and (2).

(2) Because the consultant's written report contains information considered confidential, and because disclosure of such reports would adversely affect the operation of the OSHA consultation program, the state shall not disclose the consultant's written report except to the employer for whom it was prepared and as provided for in § 1908.7(a)(3). The state may also disclose information contained in the consultant's written report

to the extent required by 29 CFR 1910.1020 or other applicable OSHA standards or regulations.

29 C.F.R. § 1908.6(g) (emphasis added).

IUP relies on the confidentiality language in subsection (g)(2). Subsection (g)(2) has no applicability here, as it precludes **state** disclosure of the **written** report to any entity except the "employer for whom it was prepared." 29 C.F.R. § 1908.6(g)(2). The written reports have been disclosed without objection from APT or IUP. The subpoenas at issue relate to oral testimony, not written reports. Precluding the depositions of Sipos and Sprankle cannot serve the confidentiality interest described in subsection (g)(2). Furthermore, IUP fails to explain how the testimony of Sipos and Sprankle would constitute **state** disclosure of confidential information. As we will explain below, IUP argues that Sipos and Sprankle acted as federal employees when they conducted the OSHA inspection at APT. Subsection (g)(2) does not support IUP's argument for quashal of the subpoenas.

■ IUP also relies on 29 C.F.R. § 1908.6(h):

(h) Confidentiality.

(1) The consultant shall preserve the confidentiality of information obtained as the result of a consultative visit **which contains or might reveal a trade secret** of the employer.

(2) Disclosure of consultation program information which identifies employers who have requested the services of a consultant would adversely affect the operation of the OSHA consultation program as well as breach the confidentiality of commercial information not customarily disclosed by the employer. Accordingly, the **state** shall keep such information confidential. The state shall provide consultation program informa-

tion requested by OSHA, including information which identifies employers who have requested consultation services. OSHA may use such information to administer the consultation program and to evaluate state and federal performance under that program, but shall, to the maximum extent permitted by law, treat information which identifies specific employers as exempt from public disclosure.

29 C.F.R. § 1908.6(h) (emphasis added).

Subsection (h)(1) requires a consultant to protect the employer's trade secrets. IUP does not argue that Sipos and Sprankle are privy to any of APT's trade secrets, or that their deposition testimony would lead to disclosure of trade secrets. Subsection (h)(2) prevents disclosure of "information which identifies employers who have requested the services of a consultant[.]" *Id.* According to the trial court's findings, APT has voluntarily identified itself as an employer who requested an OSHA consultation. Precluding the deposition testimony of Sipos and Sprankle cannot serve the confidentiality interest described in subsection (h).

Our research has revealed no precedential case law governing the issues IUP raises under § 1908. We find persuasive support for our conclusion in *Tilot Oil, LLC v. BP Products North America, Inc.*, 2011 WL 3418287 (E.D.Wisc. August 3, 2011). There, the District Court considered a motion to compel Tilot, the plaintiff, to authorize the state of Wisconsin to disclose any information in its possession related to an OSHA consultation report prepared for Tilot. *Id.* at *1. The defendant also noticed the deposition of the University of Wisconsin employee who drafted the consultation report. *Id.* As is the case instantly, Tilot voluntarily disclosed the written consultation report. *Id.*

The District Court explained that "OSHA is permitted to enter cooperative agreements with states in order to use state personnel to provide consultative services to employers regarding health and safety issues." *Id.* (citing 29 C.F.R. § 1908.1(a)). "Those regulations place strict confidentiality restrictions on state agencies which perform such consultations." *Id.* The Court reasoned that the confidentiality regulations "assure employers that engaging in voluntary consultation will not inadvertently harm them through later disclosure by the consultant." *Id.* at *2.

The fact that an employer consulted in the first place would likely carry a negative connotation, as would any potentially negative findings in the report. However, once those facts have already been disclosed voluntarily by the employer, the concern over deterring employer participation is eliminated.

*Id.* In summary, the District Court concluded that the regulations impose a duty on OSHA and the state, and that the policy underlying the regulations was inapplicable in light of the voluntary disclosure of the written report. *Id.* The District Court therefore granted the defendant's motion to compel discovery. *Id.* at *6. In *Tilot*, as here, the relief sought would not serve the confidentiality interest described in § 1908.

Based on all of the foregoing, we conclude that IUP cannot rely on § 1908 to prevent the depositions of Sipos and Sprankle.

■ Next, IUP relies on 29 C.F.R. §§ 2.20–2.22, which govern subpoenas issued to Department of Labor employees. We find these regulations facially inapplicable to this case, as IUP cites no facts or legal authority to support a conclusion that Sipos and Sprankle are Department of Labor employees, or that they acted as such

during their consultations with APT. As we have explained above, § 1908.1 expressly contemplates the use of **state** personnel, such as state university employees, to conduct OSHA consultations. 29 C.F.R. § 1908.1(a); *Tilot*, 2011 WL 3418287 at *1.

Even if we assume for purposes of argument that Sipos and Sprankle are Department of Labor employees, §§ 2.20–2.22 provide no support for IUP's argument. Section 2.20 explains:

> This subpart sets forth the procedures to be followed whenever a subpoena [...] in connection with a proceeding in which the U.S. Department of Labor is not a party, is issued for the production of (1) any material contained in the files of the Department, (2) any information relating to material contained in the files of the Department, or (3) any information or material acquired by any person while such person was an employee of the Department as a part of the performance of his official duties or because of his official status.

29 C.F.R. § 2.20(a). Section 2.20 further defines "employee of the Department" as follows: "For purposes of this subpart, the term employee of the Department includes all officers and employees of the United States Department of Labor appointed by, or subject to the supervision, jurisdiction, or control of the Secretary of Labor." 29 C.F.R. § 2.20(b).

Section 2.21 governs procedure in the event of a subpoena: "Whenever an employee or former employee of the Department receives a demand for the production of material or the disclosure of information described in § 2.20(a), he shall immediately notify the appropriate Office of the Solicitor." 29 C.F.R. § 2.21. Thus, the onus is on the Department of Labor employee to notify the Office of the Solicitor of any subpoena.[2] Subsequently, the solicitor can require the issuing party to provide a written summary of the requested information. *Id.*

Section 2.22, in turn, provides that a Department of Labor employee may not produce or disclose any information without approval from a Deputy Solicitor of Labor:

> In terms of instructing an employee or former employee of the manner in which to respond to a demand, the Associate Solicitor, Regional Solicitor, or Associate Regional Solicitor, whichever is applicable, shall follow the instructions of the appropriate Deputy Solicitor of Labor. No employee or former employee of the Department of Labor shall, in response to a demand of a court or other authority, produce any material contained in the files of the Department or disclose any information relating to material contained in the files of the Department, or disclose any information or produce any material acquired as part of the performance of his official duties or because of his official status without approval of the appropriate Deputy Solicitor of Labor.

29 C.F.R. § 2.22.

To summarize the foregoing, IUP has failed to establish that Sipos and Sprankle are federal employees subject to §§ 2.20–2.22. To the contrary, § 1908 indicates that Sipos and Sprankle acted as state employees during the APT consultations. Even if Sipos and Sprankle are Department of Labor employees subject to the dictates of §§ 2.20–2.22, the record does not indicate

---

**2.** The Simakas Defendants, arguing for reversal of the trial court's order, would place the onus on Plaintiff to obtain permission from the Department of Labor to depose Sipos and Sprankle. Simakas Defendants' Brief at 6. The Simakas Defendants' argument contradicts the plain language of § 2.21.

they followed § 2.21 by notifying the Solicitor's office of Plaintiff's subpoenas. We have no evidence that the Department of Labor has ordered Sipos and Sprankle not to testify.[3] We need not address IUP's argument under §§ 2.20–2.22 any further.

In light of all the foregoing, we conclude IUP's assertions of error lack merit. We therefore affirm the order denying IUP's motions to quash the subpoenas.

Order affirmed. Jurisdiction relinquished.

---

**3.** All Fields, citing *United States v. Reynolds*, 345 U.S. 1, 9–10, 73 S.Ct. 528, 97 L.Ed. 727 (1953) argues that an executive order would not be sufficient to curb judicial authority over the evidence in pending litigation. All Fields' Brief at 9. Absent an executive order in this case, we have no occasion to address this issue.